GEORGE BELLMAN, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Liability of a railroad for injuries to a passenger — when it is responsible for injuries resulting from acts done under the direction of its conductor.*

A military organization, whose headquarters were at Rochester, having agreed to give a public entertainment at the village of Brockport, one of its members engaged of the defendant, a railroad. company, passage for all the members from Rochester to Brockport and return. The members were carried to Brockport in a separate car, which was, after they had left it, run upon a side track, to the west of and beyond the station grounds, so that the west end of the car rested upon a bridge upon which the railroad crossed, at a height of twelve feet, a village street. Before ten o'clock in the evening the car was lighted and the doors unlocked, although no person representing the company was left in charge of it. The car could be seen from the hotel where the members of the organization were staying.

At about the time at which the freight train to which this car was to be attached was due at Brockport, most of the members of the organization, including the plaintiff, had passed from the platform of the station, across and along the tracks, and had taken their seats in the car. After the freight train had arrived and stopped, its conductor opened the door of the car and said: "Boys come out and give us a shove; shove this car on to the main track so I can hitch on." The plaintiff; with others, arose, went to the door, and seeing the freight train moving on his right-hand side, and fearing to alight on that side, stepped off the steps on the other side and fell through or over the side of the bridge to the street below.

Upon the trial of this action, brought by the plaintiff to recover damages for the injuries so sustained, the plaintiff recovered a verdict, which was, on motion, set aside for the reason that when the plaintiff boarded the car it was outside

of the station grounds, and there was not sufficient evidence to justify the jury in finding an agreement or consent by the railroad company that the plaintiff might occupy the car in the place where he found it.

*Held,* error: that the plaintiff's right to recover did not depend upon these facts, but that the question was whether at the time he received the injury the conductor had taken charge of the car and the plaintiff, as a passenger, had placed himself under his care.

Appeal from an order of the Monroe Special Term, granting the defendant's motion for a new trial on a case containing exceptions. The action was tried at the Monroe Circuit, and the plaintiff recovered a verdict of $2,000.

*Raines Bros.,* for the appellant.

*Edward Harris,* for the respondent.

Barker, J.:

The plaintiff, in alighting from one of the defendant's passenger cars, fell through the openings in a bridge over a highway, upon which the car was standing, and received severe injuries to his person. He claims that at the time he was a passenger on the defendant's road and rightfully in the car, and that the injuries which he received were caused by the negligence and carelessness of the conductor in charge of the car. The evidence bearing on the questions of fact, which the plaintiff was required under the pleadings to maintain, is undisputed. If from the proofs the jury were justified in reaching the conclusion that the conductor was guilty of negligence which caused the accident, and the plaintiff himself was not guilty of contributory negligence, then I think the verdict should be sustained, as I am unable to discover any error in the rulings of the learned trial judge, of which the defendant has reason to complain.

The facts may be briefly stated. The village of Brockport is about twenty miles west of Rochester, and the line of the defendant's road passes through both places. The plaintiff resides in Rochester, and is a member of a military organization, whose headquarters were in that city, where most of the other members also reside. This company had arranged to give a public entertainment in Brockport. Their numbers were sufficient to fill one ordinary passenger car. One of the members, Mr. Yost, acting as committee-

man for all, engaged of the defendant passage for all the members
of the company, from Rochester to Brockport and return.    The
fare paid was the regular fare for each member of the company,
and before leaving Rochester the same was paid and a return ticket
was delivered to Mr. Yost for each member of the company,
including the plaintiff.    A car was assigned by the company, in
which they were carried to Brockport in the forenoon of the day
on which the exhibition was to be given.    On arriving in Brock-
port the car was detached from the train and run upon a switch.
After the exhibition was over the members of the company were
carried back to Rochester in the same car, which was attached to a
passing freight train which left Brockport after midnight.    At the
latter place there is a depot with the usual safe and convenient
accommodations, with waiting-rooms for passengers, and is located
about 230 feet east of Main street, over which the railroad crosses
on a bridge, some twelve feet high.    In front of the depot the main
track passes, some twelve feet from the platform.    To the south of
the main track, and seven feet therefrom, there is a side track
which crosses the bridge west of the depot and intersects with the
main track.    In the morning, after the members of the company
left the car, it was switched upon the side track and run to the west
of the depot, so that the west end of the car, for some three or four
feet of its length, rested upon the trestle of the bridge.    There
were openings in the bridge at or near the end of the car, and no
guards in that section of the south side of the bridge, and the outer
space of the car was very near, if it did not overlap, the side of the
bridge.    The members of the company were guests at a hotel on Main
street, north of the bridge and near the depot, and the exhibition was
given by them in a room in the village south of the bridge and the
railroad tracks.    As early as ten o'clock in the evening the car
was lighted and the doors unlocked, without any person on the
part of the railroad company being present and in charge of the
same.    The depot building was lighted, the waiting-rooms opened,
and the telegraph office was open and the operator present.    It was
arranged by the railroad company that the military company should
return to Rochester that evening in the same passenger car, attached
to a freight train, which passed Brockport soon after the exhibition
was over.    The car could be seen, and that it was lighted could

also be observed by persons passing along the street and under the bridge, as well as rrom the hotel where the plaintiff and his companions were guests. On their way to the hotel, and while there, the plaintiff and others observed the location of the car, and that it was lighted. About the time the train was due, most of the members, if not all of the company, including the plaintiff, passed from the hotel on to the platform of the depot and across and up the tracks to the car, and took seats therein. The train was an hour late in arriving at the depot, and stopped in front of the same, so that the rear car was about opposite of the place where the passenger car stood. At this time the plaintiff was seated near the west end of the passenger car. The conductor of the freight train came to the west end of the passenger car, which rested upon the bridge, opened the door and said, so as to be heard by the plaintiff and others : "Boys, come out and give us a shove ; shove this car on to the main track, so I can hitch on." The plaintiff immediately arose from his seat and went to the door and, as he testified, saw the freight train moving on his right hand side, and fearing he might be hurt if he got off on that side of the car, he stepped down the steps on the other side, and, as he stepped off, he went through or over the side of the bridge, and fell a distance of some twelve feet. The car was moved to the switch and attached to the train.

On the question whether the plaintiff and his companions were permitted by the defendant to occupy the car, while it stood upon the switch before the arrival of the freight train, Mr. Yost, the committeeman for the company, testified as follows : "That when I contracted for the transportation it was arranged that the car was to lay there (at Brockport) for us and as soon as we were ready to move we were to take the car ; Smith (the agent for the company) said, if I remember right, that the car was at our service, and he would telegraph to the baggageman, or whoever had charge of the car there at Brockport, to hitch us unto the first train that would bring us back to Rochester ; he said that there would be a man there who would tell us whenever we were ready to return, or we should report ourselves to the authority there ; that he did notify the agent at the depot that they were ready to move."

The defendant did not give any evidence upon the trial, except as to the nature and extent of the plaintiff's injuries. I think,

from this evidence, the jury were justified in finding that the conductor was guilty of improper conduct and negligence which caused the plaintiff's injuries, and that he was free from any contributory negligence.

The evidence fairly established, and such was the opinion of the trial judge and he so instructed the jury, that the passenger car, as it stood upon the side track, was outside of the depot grounds. The legal questions presented will be examined as if such was the fact. In determining whether the verdict should stand or not, it may be assumed that the relation of carrier and passenger did not exist at the time the conductor came to the passenger car and took the control and management of the same. But the moment he ordered the car to be moved, I think it may be reasonably and fairly held, as matter of law, that the relation of carrier and passenger was resumed, as the company intended to carry the persons holding tickets back to Rochester in that car. The conductor made no request that the car be vacated by the passengers, and no objection was made to their remaining in their seats while the car was being moved so that it could be attached to the train.

The plaintiff became a passenger as soon as he came to the depot building for the purpose of being carried to his home in Rochester, for which place he had a ticket, and was entitled to the care and protection which the law requires carriers of persons to bestow upon their patrons. The question is not whether the plaintiff took a seat in the car with or without the consent of the defendant. But the inquiry is, whether, at the time he received his injury, the conductor had taken charge of the car, and the plaintiff, as a passenger, had placed himself under his care. If the plaintiff had received injuries while passing from the depot building to the car, or while in the car before the conductor assumed control of the car, a very different question would be presented.

The conductor in ordering the car to be moved acted as the agent of the railroad company, and the plaintiff did not terminate the relation of carrier and passenger by attempting to assist the conductor as requested. It was the duty of the conductor to know the condition of the place where he asked the passengers to alight, and if it was not safe and secure for them to do so, to inform them of the fact. The evidence tended to, if it did not conclusively estab-

lish, the defendant's negligence. It was clearly a question for the jury to say whether the plaintiff himself was guilty of any negligence or carelessness which contributed to the injuries which he received. He was invited by the defendant's agent to leave the car at the place where he did, and it cannot be said that his action was altogether voluntary. Passengers on board of cars are largely under the direction and control of the conductor, and it is his duty to exercise the greatest care and caution in providing for their safety. (*Hickey* v. *Railroad Company*, 14 Allen, 429; *Sweeny* v. *Railroad Company*, 10 id., 368; *Hulbert* v. *N. Y. C. R. Co.*, 40 N. Y., 145.)

An examination of the exceptions fails to disclose any error of which the defendant can complain. The learned trial judge granted a new trial, as appears by his opinion printed in the case, for the reason, that when the plaintiff boarded the car it was outside of the depot grounds, and there was not sufficient evidence to justify the jury in reaching the conclusion that there was an agreement or consent by the railroad company that the plaintiff might occupy the car in the place where he found it, and that the plaintiff took all the hazard of his conduct in occupying the car before he was invited to do so by the company. As already stated, I do not think the plaintiff's right of recovery is made to depend upon that question.

The order appealed from reversed and a new trial denied, with costs.

Smith, P. J., Haight and Bradley, JJ., concurred.

Order reversed and motion for new trial denied.